In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 25-1670

CSX TRANSPORTATION, INC.,

*Plaintiff-Appellant,*

*v.*

ZAYO GROUP, LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-02859 — **James R. Sweeney II**, *Chief Judge.*

———————

ARGUED FEBRUARY 12, 2026 — DECIDED AUGUST 7, 2026

———————

Before EASTERBROOK, PRYOR, and MALDONADO, *Circuit Judges.*

PRYOR, *Circuit Judge.* CSX Transportation, Inc., operates railroad lines across the country, including throughout Indiana. In numerous spots around the state, Zayo Group, LLC, installed fiber optic cables under CSX's railroad tracks without permission from CSX to do so and without paying CSX's licensing fee or engaging in the railroad's safety review process. Relying on Indiana law, CSX claims Zayo could not take

these actions without violating the scope of CSX's easements on the land or the permissions given to CSX by the landowners to use the land. According to CSX, these property rights gave CSX the right to exclude Zayo from the air above and the ground below CSX's tracks and the right to charge Zayo a licensing fee for its cable installations.

The district court disagreed, holding that CSX lacked standing to assert either of these property rights. The district court also held that CSX's claims pertaining to Zayo cable installations occurring outside the applicable statute of limitations were time-barred, reasoning that these installations did not constitute "continuing trespasses" that prevented the claims from accruing.

CSX now appeals, maintaining that its easements necessarily include the right to exclude third parties from installing fiber optic cables above and below its tracks and the right to charge licensing fees for those installations. CSX also contends its claims related to cables installed outside the applicable limitations periods are not time-barred. But because neither property right asserted by CSX is necessarily included in the scope of its railroad easements under Indiana law and Zayo's installations do not constitute "continuing trespasses," we affirm.

## I.   BACKGROUND

### A.  Factual Background

CSX and its predecessor railroads have operated rail lines throughout Indiana and Illinois for more than a century. Those rail lines run through rail corridors, which have a few typical hallmarks: a long, continuous right of way along a linear path; train tracks running atop that right of way; and a

surrounding buffer zone. CSX's property interest in its rail corridors varies from parcel to parcel. These interests may include owning the parcel in fee simple, possessing a rail corridor easement, possessing a leasehold interest, or possessing trackage rights from another railroad.

Public utilities use these railroad corridors to run their infrastructure between locations. Zayo is a public utility providing telecommunications services. Zayo installs fiber optic cables and other telecommunications equipment throughout Indiana. It does so by either stringing fiber cable between utility poles for aerial installations or boring fiber cable underground for subterranean installations. Aerial installations are visible from the ground. Subterranean installations involve installing cable at a depth of at least 30 to 36 inches, and Zayo's underground fiber installations are often installed deeper. The installations are typically marked above-ground using cable markers. Installations can take from a few days to a few weeks to complete. After the initial installation is complete, Zayo returns regularly to repair, replace, and maintain its cables.

Zayo's fiber optic cables cross and run parallel to railroad corridors, including those of CSX. CSX requires third parties like Zayo to coordinate with it on the nature and timing of installation construction, both to keep third-party construction crews safe and to prevent disruptions of CSX's railway operations. CSX also charges licensing fees for utility installations that cross or run parallel to its rail corridor.

### B. Procedural Background

CSX sued Zayo in November 2021 in the United States District Court for the Southern District of Indiana. CSX alleged

that Zayo installed underground fiber optic cables under a CSX railroad corridor in Greencastle, Indiana (the "Jackson Street" location) without receiving approval to do so. CSX also alleged Zayo failed to engage in the necessary safety review process or pay CSX's licensing fees. In addition, CSX contended that Zayo struck and destroyed CSX train signal cables and underground wires while making an unauthorized installation on CSX property in Montrose, Illinois.

Specifically, CSX brought ten counts against Zayo: (1) criminal trespass under the Indiana Crime Victim's Relief Act ("ICVRA"); (2) railroad mischief under ICVRA; (3) deception under ICVRA; (4) theft/criminal conversion under ICVRA; (5) civil trespass to land; (6) civil trespass to CSX components; (7) unjust enrichment; (8) failure to pay rent; (9) declaratory judgment related to Zayo's "unilateral and unauthorized actions"; and (10) declaratory judgment as to the Jackson Street location in Greencastle, Indiana. CSX later identified numerous additional unauthorized installations made by Zayo, so CSX amended its complaint to include claims for those sites, too.

The district court eventually dismissed all of CSX's Illinois-based claims for lack of personal jurisdiction.[1] Accordingly, the lawsuit before us relates only to Zayo's Indiana installations.

A set of district court rulings shrank the scope of this case significantly.

---

[1] CSX later brought the Illinois-based claims in a separate case in the United States District Court for the Northern District of Illinois. *See CSX Transp., Inc. v. Zayo Grp., LLC*, No. 1:25-cv-1824 (N.D. Ill. filed Feb. 21, 2025).

*1. Criminal Trespass to Land, Civil Trespass to Land, and Rent Claims (Counts I, V, and VIII)*

Zayo moved for partial summary judgment on CSX's claims for trespass to land and rent as to the railroad's Indiana properties where it possessed only an easement.[2] CSX maintained that its railroad easements gave it an exclusive and possessory interest in the land over which its railroad tracks ran, including the air above and the ground below its tracks. CSX argued this is true even if the language of those easements made no mention of such an exclusive possessory interest. According to CSX, that meant Zayo could not install its cables without CSX's permission and the railroad had the right to eject Zayo. CSX contended that these property rights underpinned its trespass to land and rent claims.

The district court held CSX did not have standing to assert its trespass to land and rent claims for properties where it possessed only an easement.[3] The district court observed that CSX had not pointed to language in any of its easements that exhibited the exclusivity it claimed. The district court then explained that even if CSX was entitled to exclusive use of the surface of its railroad corridors for which it possessed an easement, that entitlement did not necessarily mean CSX had exclusive use of the air above or the ground below its tracks. That mattered because Zayo had installed fiber optic cables only above or below the railroad corridor surface—not on it—

---

[2] Zayo also moved for summary judgment on additional grounds, most of which are not relevant to this appeal.

[3] District Judge Jane Magnus-Stinson ruled on this motion in April 2024. The case was later reassigned to Chief District Judge James R. Sweeney II in July 2024.

and those installations had not disrupted CSX's railroad op-
erations. Thus, the court found CSX had not provided any
proof that Zayo interfered with CSX's exclusive right to the
surface of the land. CSX's failure to demonstrate that its "pos-
sessory" interest in the land had been impacted, the district
court reasoned, was fatal to its trespass to land and rent
claims. From this, the court concluded CSX did not have
standing to bring these claims and partially dismissed Counts
I, V, and VIII.

Following its partial summary judgment ruling, the dis-
trict court denied CSX's motion to modify the court's sum-
mary judgment order to allow interlocutory review.

### 2. *Claims Barred by the Applicable Statute of Limitations*

In the district court's partial summary judgment ruling, it
also granted Zayo's summary judgment motion as to CSX
sites where Zayo installed fiber optic cables outside the appli-
cable limitations period. The limitations period for the theft of
licensing rights and criminal trespass claims was two years,
*see* IND. CODE § 34-11-2-4, and the period for the civil trespass
and rent claims was six years, *see id.* § 34-11-2-7. CSX did not
dispute that some of Zayo's installations occurred outside of
those limitations periods. Instead, CSX argued the statute of
limitations had not expired under Indiana's continuing tres-
pass doctrine, which would mean the limitations periods
would not begin to run until Zayo removed its installations
from CSX's rail corridors.

The court rejected that argument. First, it stated that the
continuing trespass doctrine was governed by federal law.
The court then acknowledged the Indiana Court of Appeals'
application of the doctrine but found it did not apply because

CSX's claims centered on Zayo's cable installations, which had a clear ending date for each site. The court observed that Zayo occasionally comes back to those sites for maintenance and repairs, but CSX's claims were not aimed at those recurring activities. Based on this, the court granted Zayo's motion for partial summary judgment as to this issue. It did so on the following claims for all sites where CSX had not created a fact issue about whether it should have known of Zayo's installations: (1) criminal trespass and theft of licensing rights claims related to installations occurring before November 16, 2019; and (2) civil trespass to land, civil trespass to components, and rent claims related to installations occurring before November 16, 2015.

### 3. *Theft of License Claim (Count IV)*

After the district court's partial summary judgment ruling, Zayo filed a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss for lack of subject matter jurisdiction CSX's claim for theft of license (Count IV) at sites for which CSX possessed only an easement.[4] The motion was referred to the magistrate judge, who, after an evidentiary hearing, recommended granting the motion. The magistrate judge concluded nothing in Indiana railroad law confirms that a railroad company holding only an easement had the "right to license or restrict others from utilizing the surface, subsurface, or air above their easement" when the operation of the railroad is not hindered. From this, the magistrate judge

---

[4] Zayo also moved to dismiss CSX's claim for civil trespass to components (Count VI). The magistrate judge recommended dismissing that claim for lack of standing. The district court adopted that recommendation without objection from CSX.

recommended dismissing for lack of standing CSX's claims for theft of licensing rights at sites where CSX had an easement. The district court adopted the magistrate judge's report and recommendation.

*     *     *

The parties subsequently settled and conditionally stipulated to the dismissal of claims still remaining for trial. This conditional stipulation allowed CSX to appeal the district court's pretrial rulings on Zayo's dispositive motions.

This appeal followed.

## II.   ANALYSIS

"We review de novo a trial court's summary judgment ruling." *Pryor v. Corrigan*, 124 F.4th 475, 486 (7th Cir. 2024) (citations omitted). Summary judgment is appropriate when no material facts are disputed and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We also review de novo the district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), accepting as true the non-movant's well-pleaded factual allegations. *Dernis v. United States*, 136 F.4th 714, 716 (7th Cir. 2025).

This is a diversity jurisdiction case, and CSX's appeal raises questions of Indiana state law. Thus, our task is to use our own best judgment to determine how the Indiana Supreme Court would rule. *See Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 706 (7th Cir. 2024). If, however, the Indiana Supreme Court has not spoken on this issue, we must attempt to predict how the state court would decide given the chance. *Abstract Title Guar. Co. v. Chi. Ins. Co.*, 489 F.3d 808, 811 (7th

Cir. 2007). We do this by looking to intermediate appellate courts in the state for persuasive guidance. *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054–55 (7th Cir. 2026); *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018). But ultimately, our inquiry centers on this question: "what would the highest court of the state do if the present case was now before that court?" *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 (7th Cir. 2024).

CSX makes three principal arguments on appeal. First, it argues that under Indiana law, its easements necessarily include the right to exclude third parties from installing fiber optic cables above or below its railroad tracks. Second, it argues that its easements necessarily include the right to license those cable installations. And third, it argues Zayo's cable installations constitute "continuing trespasses" that prevented its trespass, rent, and licensing theft claims from accruing until Zayo removes those installations. We address each argument in turn.

## A. Right to Exclude

For Indiana properties where CSX holds only an easement, the parties agree CSX's criminal trespass, civil trespass to land, and rent claims hinge on whether the railroad company holds the right to exclude Zayo from the air above and the ground below its railroad tracks. CSX concedes that none of its easements contain express language granting it exclusive control over those areas. So, for CSX to be able to exclude third parties like Zayo from those areas, its railroad easements must necessarily include that exclusionary right. Put differently, the key question is whether the right to exclude

third parties from above or below the railroad's tracks falls within the scope of a railroad easement under Indiana law.

Under Indiana law, an easement is

> "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road). The land benefitting from an easement is called the *dominant estate*; the land burdened by an easement is called the *servient estate*." The "scope" of an easement refers to the extent or boundaries of that "specific limited purpose" which benefits the dominant estate and burdens the servient estate.

*Howard v. United States*, 964 N.E.2d 779, 781 n.2 (Ind. 2012) (emphasis in original) (quoting BLACK'S LAW DICTIONARY 585–86 (9th ed. 2009)); *see also Close Armstrong, LLC v. Trunkline Gas Co., LLC*, 172 F.4th 516, 522 (7th Cir. 2026) ("An easement grants a person or entity 'the right to use another's land for a specified purpose.'" (quoting *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 990 (Ind. 2018))). Put in this case's terms, CSX's railroad corridor is the dominant estate, and the land over which that corridor runs is the servient estate.

An easement's scope is determined "by the purpose served by the easement." *Howard*, 964 N.E.2d at 781 (citations omitted); *see also N.Y. Cent. R.R. v. Yarian*, 39 N.E.2d 604, 606 (Ind. 1942) ("It is sometimes said that reservations of easements are strictly limited to the purposes in the minds of the parties, but we believe a proper application of the rule puts the limitation not upon the character of traffic upon a reserved

way, but upon the purpose to be served by the traffic."). This is because easements usually "arise to fill some need or serve some purpose." *Howard*, 964 N.E.2d at 781–82 (quoting *Klotz v. Horn*, 558 N.E.2d 1096, 1099 (Ind. 1990)). "That purpose, whether expressed in the grant, implied, or acquired through prescription, is the focal point in the relationship which exists between the titleholders of the dominant and servient estates." *Id.* (quoting *Klotz*, 558 N.E.2d at 1099).

In *Howard*, the Indiana Supreme Court defined the "purpose" of an easement acquired to operate a railway line. *Id.* at 783. There, in a "[r]ails to [t]rails" case, the court considered whether the scope of railroad easements under Indiana law included railbanking and interim trail use pursuant to the National Trails System Act, 16 U.S.C. § 1247. *Id.* at 780–81. The court held those uses fell outside a railroad easement's scope. *Id.* at 782–83. According to the Indiana Supreme Court, a railroad easement is acquired for the purpose of "the transportation of goods through the operation of a railroad line." *Id.* at 783. And a public trail involves "recreation, not transportation." *Id.* at 784 (citation modified). Thus, the state court rejected the contention that a railroad easement could be "recast for use as a public recreational trail without exceeding the scope of the easement and infringing the rights of the landowners." *Id.* at 783.

*Howard*'s definition of a railroad easement's purpose— transporting goods by operating a railroad line—is consistent with Indiana case law grappling with railroad easements' limitations. For example, the Indiana Supreme Court in *Julien v. Woodsmall* held that a railroad with only an easement had no right to remove valuable ice from the surface of its corridor. 82 Ind. 568, 571 (1882). The right to take that ice belonged to

the landowner, so the railroad company could not remove it from the corridor "except for the construction, repair or operation of its road." *Id.* That limitation is consistent with the Indiana Supreme Court's reasoning in *Smith v. Holloway*, where the court explained that "[t]he owner of the fee remains the owner of springs, streams, minerals, and the like" because "all that he grants is an easement," so the landowner "cannot interfere with the free use of the [railroad's] right of way; but, subject to this use, he may make all lawful use of the land." 24 N.E. 886, 886 (Ind. 1890) (discussing stream of water flowing across the land). And this same court echoed that principle in *Cincinnati, C., C. & St. L. Railway v. Simpson*, explaining that "where an easement for a right of way is granted a railway company across lands of another, the owner of the fee remains the owner of all mineral in the land, and may make all lawful use of the land so long as he does not interfere with the free use of the right of way." 104 N.E. 301, 306 (Ind. 1914).[5]

These cases stand for the proposition that a railroad has wide-ranging authority to use the surface of its railroad corridor for its operations, but the servient estate owner retains all other rights—including, but not limited to, extraction of natural resources—that do not impede railroad operations.

That proposition accords with a line of Indiana Supreme Court cases analyzing infrastructure installed below a railroad corridor. In *Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Smith*, a property owner sought to run pipes beneath a railroad's right of way to pump spring water. 97 N.E.

---

[5] Generally speaking, the landowners of the servient estate own that land in fee simple, which is "the broadest property interest allowed by law." *Fee Simple*, BLACK'S LAW DICTIONARY (12th ed. 2024).

164, 172 (Ind. 1912). The Indiana Supreme Court explained that "[i]n view of the responsibility of railway companies for safely carrying persons and property, and the great hazard to life and property from obstructions on the tracks, it must be held that the company's right of possession of the surface of the right of way is practically exclusive." *Id.* But the court drew a contrast with the subterranean pipes, reasoning the property owner "might at least conduct the water from the stream through pipes onto his land outside the right of way, without any practical interference with the company's exclusive possession of the appropriated strip on which the stream is now flowing." *Id.* at 172–73. The property owner could engage in this activity so long as he did not interfere with the railroad's right to exclusive possession of its railroad corridor surface.

*Consumers' Gas Trust v. American Plate Glass Co.* is also instructive. There, the court held that a fee owner's lessee could enjoin a railroad with an easement from sinking a gas well in the railroad's right of way. 68 N.E. 1020, 1021–22 (Ind. 1903). This holding demonstrates that a railroad possessing only an easement does not necessarily possess exclusively the ground below its tracks.

Indeed, even a railroad owning in fee the land on which its tracks run may not necessarily be entitled to prevent an easement holder from running pipes below the tracks. In *New York Central Railroad Co. v. Yarian*, the railroad possessed in fee a strip of ground running through a farm. 39 N.E.2d at 605. That strip was intended for use as the railroad's corridor, and an easement was reserved for the farmer so he could use both sides of his farmland. *Id.* The farmer sought electricity in his farmhouse, so he installed an iron pipe below the railroad

tracks to run electrical cables up to the house. *Id.* The railroad sued, arguing this underground piping fell outside the easement's purposes of farming and domestic uses. *Id.*

The Indiana Supreme Court rejected the railroad's argument. *Id.* at 606. The conveyance of the easement, made in 1871, arose out of the farmer's need for a crossing to access divided portions of the farm and the adjacent highway. *Id.* The court recognized that the parties to the 1871 conveyance may not have envisioned a farmer's need for electricity to manage his farm and farmhouse decades later, but such a need was nonetheless consistent with the easement's original purpose. *Id.* From this, the court concluded the pipes would cast "no additional burden" on the railroad. *Id.* The Indiana Supreme Court did, however, reverse the judgment to have the lower court evaluate whether the appellee's installation "interfere[d] with the reasonable operation of the railroad," as the railroad had also argued the piping was a dangerous nuisance. *Id.* at 607.

These three subterranean installation cases, taken together, stand for the proposition that non-railroad servient estates retain all other rights that come with fee ownership. This includes the right to place—or allow third parties to place—installations that do not interfere with the railroad's operations.

CSX takes a much more expansive view of the rights afforded to it by its railroad easements. It argues a railroad easement is special under Indiana law and affords more property rights than other easement types. To CSX, a railroad easement is equivalent to fee simple ownership in all ways except one: under a railroad easement, the servient estate retains the right to natural resources on the railroad's right of way.

That distinction, however, is not borne out in Indiana railroad law. The touchstone for determining the scope of an easement, including a railroad easement, is looking to the purpose of that easement at the time it was granted. *Howard*, 964 N.E.2d at 783. While we recognize a long line of Indiana Supreme Court decisions revealing that railroads have wide latitude to demand exclusive use of their easement's surface for their operations, *see Julien*, 82 Ind. at 571–72; *Smith*, 24 N.E. at 886; *Simpson*, 104 N.E. at 306, this right is limited by the purpose of the easement at the time of its acquisition, *see Howard*, 964 N.E.2d at 783; *Yarian*, 39 N.E.2d at 606. And by the same token, non-railroad servient estates retain all other property rights otherwise afforded to them by virtue of fee ownership, including the placement of subterranean installations that do not interfere with the railroad's operations. *See Consumers' Gas Trust*, 68 N.E. at 1021–22.

CSX has a point that many of these Indiana Supreme Court cases involve natural resources. But the reasoning of those cases is not limited to just the extraction of natural resources. CSX's natural-resources-only theory of railroad easements is also hard to square with *Howard*'s teachings about the purpose of the easement. 964 N.E.2d at 783. CSX's theory would stretch the purpose beyond all recognition, stripping away the ability of servient estates—or third parties with their permission—to take many actions that do not otherwise disrupt railroad operations.

CSX also argues that, as a matter of policy, its expansive view of railroad easements would better mitigate safety risks that may arise from its railroad operations. To be sure, the safe operation of railroads requires diligent oversight by railroad companies and regulators alike. For example, CSX inspects

and tests its equipment on a monthly, quarterly, annual, biennial, and decennial basis, and federal regulations promulgated by the Federal Railroad Administration impose engineering, inspection, and safety obligations on CSX, *see, e.g.*, 49 C.F.R. §§ 213, 233–36. But CSX goes further, arguing that safety risks can be sufficiently mitigated only if its railroad easements include the right to exclude others from above and below the tracks.

CSX's safety concerns are well taken but, in this context, ultimately unpersuasive. It is undisputed that none of Zayo's Indiana cable installations have disrupted CSX's railroad operations.[6] And to the extent an existing or future third-party installation *does* disrupt CSX's operations, its railroad easements would plainly allow it to remedy that disruption. Under Indiana law, the scope of a railroad easement does not undermine CSX's ability to safely operate its rail lines. *See Louisville & Ind. R.R. v. Ind. Gas Co.*, 829 N.E.2d 7, 11 (Ind. 2005) (noting Indiana's right of way statute and "common law precepts" protected the railroad's interest "in the continued peaceful and efficient use of its tracks to facilitate commerce").

At bottom, the scope of CSX's railroad easements does not include the right to exclude third parties from the air above and the ground below its railroad corridor, at least to the extent those third parties are not disrupting CSX's railroad

---

[6] CSX does allege that Zayo struck and destroyed CSX train signal cables and underground wires while making an unauthorized installation on CSX property in Montrose, Illinois. But the case before us relates only to Zayo's Indiana installations, and, as noted earlier, CSX has brought claims related to Illinois sites in a separate case.

operations. That right remains with the non-railroad servient estate. The district court correctly decided this legal question, so we affirm as to this issue.[7]

---

[7] The district court, however, erred in dismissing CSX's easement-based criminal trespass, civil trespass to land, and rent claims for lack of standing. The crux of the district court's reasoning rested on its finding that CSX lacked the property right it asserted, rather than on any determination that CSX had failed to advance a colorable claim to that right. That is typically enough to show an injury-in-fact for purposes of Article III standing. *See Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 501 (7th Cir. 2024) ("[A] litigant is not required to show that it will win in order to establish standing."); *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020) (holding allegations of a property right deprivation are typically enough to show a cognizable injury, even if "the alleged property right … is highly unusual, and one might be immediately skeptical about whether it exists"). The district court should have dismissed these claims with prejudice on the merits, but instead it stated in its partial summary judgment order that the claims were dismissed without prejudice for lack of standing. If the district court's final judgment had also reflected this disposition, we would have to consider whether it would be appropriate to modify the judgment to a dismissal on the merits. *See Matushkina v. Nielsen*, 877 F.3d 289, 296–97 (7th Cir. 2017). But we need not reach that question because there is nothing in the judgment to modify. The judgment, taken "on its own terms," *Hoskins v. Poelstra*, 320 F.3d 761, 763–64 (7th Cir. 2003), is silent as to whether these claims were dismissed with or without prejudice, as it appears to incorporate by reference all of the case's dispositive orders that dismissed claims. *See also Paganis v. Blonstein*, 3 F.3d 1067, 1069, 1071 (7th Cir. 1993) (explaining a "final judgment must be complete and self-contained," and it "should not incorporate any other document"). And the district court, in substance, made a merits determination that CSX did not possess the property right it asserted. *See Protect Our Parks*, 971 F.3d at 736–37. With that, we may affirm without further handwringing.

### B. Right to License

Next, CSX argues Indiana courts recognize a railroad's right to license utility infrastructure placed above or below its railroad corridor where it holds only an easement. CSX does not argue that any of its easements contain express language granting it this right. So, much like the discussion above about the right to exclude, assessing CSX's assertion of a right to charge licensing rent still requires an inquiry into the scope of railroad easements under Indiana law. That inquiry just centers on a different right—whether an Indiana railroad easement necessarily includes the right to license the installation of fiber optic cables installed above or below CSX's railroad corridor.

Given our conclusion above that CSX's railroad easements do not necessarily allow it to exclude third parties from above and below its tracks, it is hard to see how those same easements could allow CSX to charge a licensing fee for that same area. Indeed, the "cardinal rule in property law is that one cannot sell what one does not own." Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 ECOLOGY L.Q. 351, 389 (2000). The thrust of CSX's argument relies on its contention that owners of the fee merely retain the right to remove their natural resources from the railroad corridor. As already discussed above, Indiana case law does not support that contention. The purpose of a railroad easement is the operation of a rail line, *Howard*, 964 N.E.2d at 783, and owners of the fee retain all other rights consistent with that use. It stands to reason, then, that owners of the fee also retain the right to charge license rent to public utilities. Put another way, CSX's

easements do not necessarily include the right to license the air above and the ground below its railroad corridor.

This conclusion accords with *Louisville & Indiana Railroad v. Indiana Gas Co.*, an Indiana Supreme Court case providing additional insight into how the court assesses the interplay between railroads and utilities. *See* 829 N.E.2d at 8. There, a gas company laid pipe along a county road that crossed a railroad's tracks, and the railroad argued the gas company owed it rent for passing the pipe under its tracks. *Id.* The court held that the gas company did not owe rent to the railroad. *Id.* Two grounds supported this holding. First, the court explained that Indiana's right of way statute authorized the gas company, a public utility, to enter the county road and install piping along the roadway.[8] *Id.* at 11. Second, the court reasoned that Indiana courts have understood Indiana's right of way statute "as contemplating that the public utility would not need to compensate the landowner, inasmuch as such a use does not place an additional burden on the subservient land." *Id.* In so reasoning, the court relied on *Fox v. Ohio Valley Gas Corp.*, 235 N.E.2d 168, 172 (Ind. 1968), which held that an owner of the fee was not entitled to additional compensation when a gas company laid its pipe in the county road crossing his land. That principle from *Fox* meant the court in *Louisville & Indiana Railroad* did not have to decide what type of interest the railroad had in the land over which its tracks ran.

---

[8] This statutory provision stated in pertinent part: "Public and municipally owned utilities are authorized to construct, operate, and maintain their poles, facilities, appliances, and fixtures upon, along, under, and across any of the public roads, highways, and waters outside of municipalities, as long as they do not interfere with the ordinary and normal public use of the roadway." IND. CODE § 8-20-1-28.

829 N.E.2d at 11–12. The court explained that if the railroad "owns the land in fee, *Fox* applies directly, and the [r]ailroad is not entitled to compensation beyond what it, or its predecessor in interest, received when the right-of-way was established." *Id.* at 11. On the other hand, if the railroad merely "possesses an easement, it does not possess rights greater than that of the underlying" owner of the fee. *Id.* Either way, the railroad had no right to exclude the gas company. *Id.* at 12. And because the pipeline "[did] not place an additional burden on the land," the railroad was not entitled to collect license rent, either. *Id.*

*Louisville & Indiana Railroad* does not directly decide the case before us—the public utility there installed its pipes along a county road, which, for the claims CSX challenges on appeal, Zayo did not do. But this case nonetheless undermines CSX's contention that its easements necessarily carry with them the right to charge license rent for a public utility's infrastructure installed below the railroad's tracks.

CSX points to three Indiana cases in rebuttal, but none carries the day for it. First, CSX offers *Consumers' Gas Trust* for the proposition that servient estates do not hold the right to license utility infrastructure installed below a railroad corridor, so, in CSX's view, railroads must hold that right. That argument significantly overreads this case. *See Consumers' Gas Trust*, 68 N.E. at 1021–22. In *Consumers' Gas Trust*, the Indiana Supreme Court held that a railroad with an easement for its corridor could be enjoined by the gas company lessee of the owner of the fee from drilling a gas well within the railroad's right of way because such drilling would impair the lessee's proprietary interest. *Id.* Clearly, those are not the facts of this case and *Consumers' Gas Trust* is thus distinguishable.

Second, CSX puts forward *Ritz v. Indiana & Ohio Railroad*, which involved (among other things) a landowner's trespass claim against a utility company for cutting down trees and placing a utility pole in a contested property area that contained, according to the parties, a railroad's right of way. 632 N.E.2d 769, 775–76 (Ind. Ct. App. 1994). Relying on Indiana's right of way statute, the appellate court explained that "a utility may utilize a public right of way without the consent of the servient landowner who claims that such a use is an additional burden and servitude to the fee which is subject to the easement for highway purposes." *Id.* at 775 (citing *Fox*, 235 N.E.2d at 172–73, and *Deetz v. N. Ind. Fuel & Light Co.*, 545 N.E.2d 1103, 1105 (Ind. Ct. App. 1989)). The court concluded this analysis applied "with equal force" to the plaintiff's trespass and takings claims as related to the railroad's right of way. *Id.* In examining this portion of the servient landowner's claim, the court reasoned "[n]o additional burden is cast upon the fee beyond that which was contemplated and paid for in the original taking" when there was "no dispute over whether the railroad [had] a right-of-way or [had] permitted the utilities to utilize its easement," regardless of whether the railroad owned the fee. *Id.* at 775–76 (citing *Fox*, 235 N.E.2d at 172–73, and *Yarian*, 39 N.E.2d at 606–07). But *Ritz* does not suggest, as argued by CSX, that a railroad retains the right to license utility infrastructure. Instead, all *Ritz* stands for is that a utility is authorized by Indiana statutory and common law to make use of a public right of way without the consent of the servient landowner. *Id.* In that way, *Ritz* is no different than *Louisville & Indiana Railroad*. *See id.*; *Louisville & Ind. R.R.*, 829 N.E.2d at 11–12.

Third, CSX relies on *Calumet National Bank v. AT&T*, 682 N.E.2d 785 (Ind. 1997), a case interpreting a previous

version of Indiana's Abandoned Railroad Rights-of-Way Act. There, a railroad company and a telecommunications company entered a licensing agreement in 1984 authorizing the telecommunications company to install and operate a fiber optic system along the railroad's right of way. *Id.* at 787. The railroad had abandoned the right of way by 1985, but the two companies amended the licensing agreement in 1988 to include the stretch of right of way at issue in the case. *Id.* at 787, 791. The Indiana Supreme Court held this license amendment was not enforceable. *Id.* at 791. The court reasoned the railroad "had no interest" in the right of way upon its abandonment in 1985, and a "license granted by a railroad company to a communications company" is valid only if the railroad company grants the license "while the railroad company still has an interest" in the right of way. *Id.* So, because the license amendment occurred after the railroad company's abandonment, the railroad company had no interest supporting that license amendment. *Id.*

CSX argues that *Calumet National Bank* demonstrates that railroad companies in Indiana have the right to license utility infrastructure. But we do not contest that, as a general matter, a railroad easement *could* give a railroad company the right to issue a license for fiber optic cables or other utility infrastructure. The problem for CSX, as it has conceded, is that none of its easements contain express language granting it this right. *Calumet National Bank* does not change that fact. Nothing in that case or other sources of Indiana railroad law supports CSX's contention that the scope of an easement that is silent as to licensing rights necessarily includes those rights.

In short, these three Indiana cases do not support the licensing right that CSX asserts. The non-Indiana cases that

CSX advances also do not persuade. We are a court sitting in diversity tasked with applying Indiana law, so we must assess the scope of railroad easements under Indiana law. To that end, cases applying other states' law are simply inapposite in that assessment when we have sufficient guidance from the Indiana state courts.

Finally, CSX raises two policy considerations. First, it offers many of the same safety arguments already discussed above. And second, CSX contends that assigning licensing rights to railroads reduces transaction costs and promotes economic efficiency because public utilities would have to negotiate with only the railroad, not a potentially fragmented set of servient estate owners. These policy arguments, even if accepted as true, may be persuasive to the Indiana Legislature, but they fail to alter our analysis here.

In sum, under Indiana law CSX's railroad easements do not necessarily include the right to license the air above and the ground below its railroad corridor. That right remains with the owner of the servient estate. The district court also decided this legal question correctly.

### C. Statute of Limitations

Finally, we consider whether a handful of CSX's claims are barred by the applicable statute of limitations. Recall that Zayo installed its cables above and below CSX's tracks for many years prior to CSX filing suit in November 2021. Some of those installations occurred before the applicable limitations periods, which are two years for CSX's criminal trespass and licensing theft claims, *see* IND. CODE § 34-11-2-4, and six years for its civil trespass and rent claims, *see id.* § 34-11-2-7. CSX argues we should reinstate its civil trespass, criminal

trespass, licensing theft, and rent claims relating to cables Zayo installed before the applicable limitations periods. We should do so, CSX contends, because Zayo has not removed its installations from CSX's railroad corridors, so those cables constitute "continuing" trespasses and thus the applicable limitations period has not yet started to run.

For state law tort claims, we apply that state's statute of limitations and its accrual rules. *See, e.g.*, *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 950–51 (7th Cir. 2019); *see also Giovannelli*, 164 F.4th at 1054 (explaining that when "[d]iversity jurisdiction is our basis of authority," we apply state substantive law, which "includes a state's statutes of limitations"). For the accrual of torts, Indiana law distinguishes between "permanent" and "continuing" injuries. *Dolph v. Mangus*, 400 N.E.2d 189, 191 (Ind. Ct. App. 1980) (collecting Indiana Supreme Court and Court of Appeals cases showing that "Indiana subscribes to this 'dual rule' distinction"); *see also* 18 IND. LAW ENCYC. LIMITATION OF ACTIONS § 45 (June 2026 Update). For a "permanent" injury, "a plaintiff has but one claim for relief in which he may recover for all damages, past, present and prospective." *Dolph*, 400 N.E.2d at 191. For an injury deemed "continuing" or "recurring," on the other hand, "each new injury is treated as a new claim for relief and recovery is limited to that specific injury." *Id.*

A claim stemming from a permanent injury "must be commenced within the statutory period or it is barred." *Id.* But if an injury is continuing, "each new injury starts the limitations statute running anew." *Id.*; *see also Keane v. Pachter*, 598 N.E.2d 1067, 1072 (Ind. Ct. App. 1992) (recognizing this distinction and holding noise-based nuisance action not time-barred

because condominium owner's injuries were recurring or intermittent).

The "underlying purpose" of this doctrine is "accurately assess[ing] the damages the plaintiff has suffered." *Dolph*, 400 N.E.2d at 191. Courts ask whether "the injury [is] such that he should recover only for the damage experienced from a particular occurrence," or whether "the consequences [are] sufficiently certain that a broader recovery should be permitted and required." *Id.* That is why continuing injuries, "when continued over a protracted period of time may, through the regularity of their recurrence and the nature of the damage caused, become 'permanent.'" *Id.* In that circumstance, the statute of limitations begins to run when the injury's permanence is discernable. *See id.* at 191–92 (holding flooding of plaintiffs' cropland from defendants' tile system was a permanent injury because the damage had become permanent before the limitations period, even though plaintiff described the flooding as "continuous").[9]

---

[9] The Indiana Court of Appeals has also applied the continuing injuries doctrine in more recent cases centered on nuisance odors, gases, and industrial contamination. *Compare Stickdorn v. Zook*, 957 N.E.2d 1014, 1018–19, 1023–24 (Ind. Ct. App. 2011) (holding plaintiffs' nuisance and trespass claims based on neighbors' animal waste management practices not time-barred; defendants' "repeated manure spills, improper spreading of the waste on [plaintiffs'] fields, and the refusal to put a cover on their manure pit amount[ed] to an intermittent, abatable nuisance," and the manure pit itself "became a temporary continuing nuisance through its use, and not a permanent one from its mere existence"), *and Kerr v. City of South Bend*, 48 N.E.3d 348, 350, 355 (Ind. Ct. App. 2015) (holding noxious gases entering plaintiff's home due to City's alleged failure to maintain sewer line triggered "new limitations periods … as gases continue to cause harm," reasoning these nuisance gases were "directly analogous" to the nuisance

Applying these principles here, the applicable limitations periods began to run when Zayo first installed its cables. This is because the permanence of CSX's purported injuries became clear upon each initial installation. *See Dolph*, 400 N.E.2d at 191. We recognize that Zayo will have to periodically come back to repair and maintain its cables. But this was predictable upon installation and does not support a continuing-trespass theory. As the court explained in *Dolph*, the "continuous" effects of an injury do not necessarily undercut the permanence of an injury. *Id.* at 192. Here, the bulk of any possible harm was done once Zayo installed its cables, and any future harm could be predicted at the time of installation. Thus, Zayo's cable installations do not constitute "continuing" trespasses that prevent the applicable limitations periods from starting to run.[10]

---

odors in *Stickdorn*), *with Elkhart Foundry & Mach. Co. v. City of Elkhart Redevelopment Comm'n*, 112 N.E.3d 1123, 1132 (Ind. Ct. App. 2018) (observing "the activity that allegedly caused the contamination ceased" outside the relevant limitations period, and "the mere persistence of contamination at the [industrial] site does not amount to a 'continuing nuisance' under *Stickdorn*").

[10] *Stickdorn* and *Kerr* are distinguishable for similar reasons. What made the noxious odors, manure, and gases a continuing nuisance and trespass in those cases was the intermittence and relative unpredictability of how those substances would continue to spread. *See Stickdorn*, 957 N.E.2d at 1023–24; *Kerr*, 48 N.E.3d at 355. Here, by contrast, the predictability of any future harm from Zayo's potential future maintenance and repairs confirms the permanent nature of CSX's claimed injuries. CSX is trying to bootstrap Zayo's future returns for maintenance into Zayo's initial installation. That is not enough to make Zayo's installations a continuing injury that prevents the applicable limitations periods from running.

Resisting this conclusion, CSX argues we should instead adopt the reasoning from *Baltimore County v. AT&T Corp.*, 735 F. Supp. 2d 1063 (S.D. Ind. 2010) (Hamilton, J.). There, AT&T had previously installed fiber optic cables on land later acquired by the County, and AT&T argued the County could not bring a trespass claim for that reason. *Id.* at 1080. The district court explained that the viability of AT&T's argument hinged on whether, under Maryland law, the trespass was permanent or continuing. *Id.* Maryland law had not addressed the question directly, so the district court looked for support in the Restatement (Second) of Torts, the Prosser & Keeton torts treatise, and out-of-state cases. *Id.* at 1080–81. From this, the district court concluded Maryland courts would likely treat the County's injury as continuing because "AT&T's ongoing use of the cable [would] require[] not just the one entry for the cable's original installation but would almost certainly involve additional entries to repair, replace, and maintain the cable." *Id.* The court then relied on this conclusion in holding that the statute of limitations had not yet expired for these continuing trespasses. *See id.* at 1087–88.

We do not accept CSX's invitation to follow *Baltimore County*, however, because the district court there did not rely on Indiana law in assessing whether the cable installations constituted a continuing trespass. CSX protests that *Baltimore County* does not rely on Maryland-specific law and instead is based on general legal principles from influential restatements and treatises. Specifically, CSX points to the district court's reliance on the Restatement (Second) of Torts § 161(1) and a section of the Prosser & Keeton torts treatise. But CSX does not offer, nor could we find, any case suggesting Indiana

has adopted these sources as law.[11] Rather, the Indiana courts have provided guideposts for how to analyze this type of accrual issue. We follow that approach here. *See Giovannelli*, 164 F.4th at 1054–55; *Green Plains Trade Grp.*, 90 F.4th at 928.

CSX also argues the failure to apply the continuing trespass doctrine here would undermine Indiana's policy disfavoring prescriptive easements. Zayo contends CSX waived this argument by failing to raise it in a timely fashion in the district court. But even assuming this argument is not waived, it still does not move the needle for CSX. Under Indiana law, "[a] party claiming the existence of a prescriptive easement must provide evidence showing an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right." *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 405 (Ind. 2005) (citation modified). A prescriptive easement claimant "must establish clear and convincing proof" of (among other elements) an intent to establish that claim of right "superior to the rights of all others,

---

[11] CSX does offer an Indiana Supreme Court case that favorably cited comments to another section of the Restatement (Second) of Torts. In *Reed v. Reid*, the Indiana Supreme Court cited comment i of the Restatement (Second) of Torts § 158 for the following proposition: "The defendant in a trespass action need not have personally entered upon the plaintiff's land, but may trespass by causing a thing to enter the land." 980 N.E.2d 277, 294 (Ind. 2012); *see also id.* ("[I]n the absence of the possessor's consent, … it is an actionable trespass to throw rubbish on another's land, even though he himself uses it as a dump heap." (quoting RESTATEMENT (SECOND) OF TORTS § 158 cmt. i)). CSX argues that a different comment to § 158—one *Reed* did not discuss—mirrors a comment to § 161, and we should follow § 161 on that basis. But that highly attenuated chain of reasoning offers little assurance that the Indiana Supreme Court, if faced with the accrual issue presented in this case, would adopt CSX's proposed rule.

particularly the legal owner." *Id.* at 406 & n.1. Zayo does not purport to assert such an intent here. Moreover, a court's conclusion that a claim is barred by the statute of limitations is distinct from its finding of the existence of a prescriptive easement. *Dolph*, 400 N.E.2d at 190. The "essential difference" between the two is that a prescriptive easement "is positive and creates rights" while the operation of a statute of limitations is "negative and destroys." *Id.* In that way, applying the statute of limitations to CSX's time-barred claims neither grants Zayo a prescriptive easement implicitly nor undermines Indiana's general recognition that prescriptive easements are disfavored.

Taken all together, Zayo's cable installations before the applicable limitations periods do not constitute "continuing" injuries under Indiana law. Accordingly, the district court correctly concluded CSX's criminal trespass and licensing theft claims related to Zayo installations in Indiana before November 2019 and CSX's civil trespass and rent claims related to Zayo installations in Indiana before November 2015 were time-barred.

### III.  CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.